# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

CASE NO. 1:18-CV-21346-JLK

GREAT AMERICAN INSURANCE
COMPANY, a foreign corporation,

    Plaintiff,

v.

SEABOARD MARINE, LTD., INC.,
a foreign corporation,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court upon Defendant Seaboard Marine, Ltd., Inc.'s ("Seaboard Marine") Motion for Summary Judgment (D.E. 16), filed May 14, 2019.[1]

### I. BACKGROUND

This subrogation suit arises out of the theft of a forty-foot shipping container as it was being transported by truck to a port where it was to be loaded onto a vessel destined for the United States. According to three bills of lading dated November 15, 2017, Defendant Seaboard Marine contracted with non-party Darik Enterprises, Inc. ("the seafood owner") to transport thousands of cases of frozen seafood from "place of receipt" Rama, Nicaragua to "port of loading" Puerto Limon, Costa Rica; then via vessel "*Angelina 24*" to "port of discharge" Brooklyn, NY; and finally to "place of delivery" Elizabeth, New Jersey (*see* D.E. 16-2, at 6–9).

---

[1] The Court has also considered Plaintiff's Response in Opposition (D.E. 18), filed May 28, 2019; and Defendant's Reply (D.E. 34), filed June 4, 2019.

It is undisputed that on November 16, 2017, container No. CXRU 155737 8 was transported by Defendant Seaboard Marine by truck from Central American Fisheries to the Costa Rican border, and on November 17, 2017 it was transported to Defendant's container yard "located a few miles outside Puerto Limon, Costa Rica" (D.E. 16, at 3, ¶¶ 7–8). Then, on November 20, 2017 at 12:48 a.m., the container departed Defendant's container yard for the port "where it was to be loaded onto the ship Angelina, which was scheduled to depart that day" (D.E. 16, at 4, ¶ 9). It is undisputed the container was lost in the area between the container yard and the port, which is known as the "carousel" (D.E. 16, at 2).[2] Plaintiff attaches to its Complaint a "Subrogation Receipt" signed by the seafood owner for the loss at issue (D.E. 1, at 7).

In the instant Motion for Summary Judgment, Defendant argues that "[p]ursuant to the express terms of the Responsibility clause of [Defendant's] bill of lading terms and conditions, [Defendant] is not liable for loss arising from hijacking and is therefore entitled to judgment as a matter of law" (D.E. 16, at 8). In response, Plaintiff argues that (a) the Harter Act prohibits a carrier from using terms and conditions in its bill of lading to avoid liability (D.E. 18, at 4–11); and (b) Defendant has not met its burden under the burden-shifting framework of the Carriage of Goods by Sea Act of 1935 ("COGSA") to show it was not at fault (*id.* at 11–15).

## II. DISCUSSION

### A. Legal Standard on Summary Judgment

Summary judgment is appropriate where there is "no *genuine* issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)

---

[2] Defendant proffers the deposition of Plaintiff's corporate representative, Julia Price, for acknowledgement that the container was "intercepted by armed hijackers who stole the container" (D.E. 16, at 4, ¶ 11), but Plaintiff disputes that "Ms. Price was a competent witness to provide testimony as to the alleged cause of loss" (D.E. 19, ¶ 11).

2

(emphasis added); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is genuine if a reasonable fact finder could return a verdict for the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). A fact is material if it may affect the outcome of the case under the applicable substantive law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). If a reasonable fact finder could draw more than one inference from the facts, creating a genuine issue of material fact, summary judgment should not be granted. *Samples ex rel. Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). The moving party has the burden of establishing both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986).

## B. Clause 4(b) of Defendant's Bill of Lading is Void Under the Harter Act

Defendant Seaboard Marine argues that it is not liable for the loss at issue because Clause 4(b) of its Bill of Lading Terms and Conditions is "an enforceable provision . . . reflecting the parties' agreement to allocate risk in the event of a hijacking" (D.E. 16, at 8). The provision states:

> The Carrier shall not be liable in any capacity whatsoever for . . . acts of thieves, hijacking . . . or any other loss or damage to or in connection with the Goods or Containers or other packages occurring at any time contemplated under subdivision a) of this Clause.

(D.E. 16-1, at 2–3). Subdivision (a) of that Clause defines the applicable time as "during the entire time the Carrier is responsible for the goods."[3]

---

[3] The full description of the relevant time period in Clause 4(a) is:
    . . . before loading on and after discharge from the vessel and throughout the entire time the Goods or Containers or other packages are in the care, custody and/or control of the Carrier, its agents, servants, Participating carriers or independent contractors (inclusive of all subcontractors), whether engaged by or acting for the Carrier or any other person, and during the entire time the Carrier is responsible for the Goods.
(D.E. 16-1, at 2).

3

Plaintiff counters that the Harter Act applies to this action (D.E. 18, at 4–11). The Harter Act states that a "carrier engaged in the carriage of goods to or from any port in the United States," 46 U.SC. § 30702(a), "may not insert in a bill of lading or shipping document a provision avoiding its liability for loss or damage arising from negligence or fault in . . . custody, care, or proper delivery," *id.* § 30704. "Any such provision is void." *Id.* The Eleventh Circuit has recognized that the Harter Act governs a carrier's custody or care of property during the preloading phase. *Allstate Ins. Co. v. Int'l Shipping Corp.*, 703 F.2d 497, 499 (11th Cir. 1983) ("Because the damage here undeniably occurred prior to the time the goods were loaded, the Harter Act . . . controls."). In *Allstate*, a carrier that contracted to ship cargo from Mobile, Alabama to San Juan, Puerto Rico broke the seals of the items while still in Mobile, Alabama. *Id.* at 498. The Eleventh Circuit stated that when a carrier "accept[s] custody of the [cargo] it undert[akes] all obligations imposed upon a carrier by the Harter Act . . . including the responsibilities of a common law bailee." *Id.* at 499.[4]

Here, Defendant itself asserts that the forty-foot shipping container departed its own container yard at 12:48 a.m. "for carriage in the carousel to the port terminal, where it was to be loaded onto the ship Angelina, which was scheduled to depart that day" (D.E. 16, at 4, ¶ 9). Defendant cites to the affidavit of its own Director of Compliance, Dan O'Neill, for this fact (*id.*;

---

[4] The Harter Act, originally passed in 1893, was largely supplanted by the Carriage of Goods by Sea Act of 1936 ("COGSA"), now codified as the note following 46 U.S.C. § 30701. Although COGSA by its terms only governs for the period that cargo is loaded onto an ocean vessel, a carrier may extend COGSA by contract to the entire time the goods are in its custody, "including a period of inland transport." *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 96 (2010) (internal quotation marks omitted). Here, Clause 4(a) of Defendant's Bill of Lading Terms and Conditions extends COGSA to the time "before loading on" the vessel. However, courts that have "upheld contractual extensions of COGSA to periods ordinarily covered by the Harter Act," have done so only to the extent that COGSA does not conflict with the Harter Act. *PT Indonesia Epson Indus. v. Orient Overseas Container Line, Inc.*, 219 F. Supp. 2d 1265, 1269 (S.D. Fla. 2002) (Jordan, J.); *e.g.*, *Uncle Ben's Intern. Div. of Uncle Ben's, Inc. v. Hapag-Lloyd Akteingesellschatft*, 855 F.2d 215, 217 (5th Cir. 1988); *Fruit of the Loom v. ARAWAK Caribbean Line Ltd.*, 126 F. Supp. 2d 1337, 1341–42 (S.D. Fla. 1998) (Lynch, M.J.). Therefore, Seaboard Marine's contractual extension of COGSA in its bill of lading has no bearing on whether the Harter Act applies here.

*see also* D.E. 16-2, at 4, ¶ 18), and it is the position of both parties that the cargo was lost "[a]fter departing from the container yard" (D.E. 16, at 4, ¶ 11; D.E. 19, ¶ 11). Therefore, the Court concludes that the "carousel" area where the cargo was lost is certainly part of the preloading phase governed by the Harter Act in this Circuit. *See Allstate Ins. Co.*, 703 F.2d at 498.

In its Reply, Defendant cites a string of cases from around the federal judiciary for the position that "the Harter Act does not apply to a [loss] occurring during the inland phase of a multimodal carriage" (D.E. 34, at 4), even when in the custody of the carrier (*id.* at 5). In the first case in this line, *Jagenberg, Inc. v. Georgia Ports Authority*, 882 F. Supp. 1065 (S.D. Ga. 1995), the court found "it advisable to keep sea carriers to the standards imposed by the Harter Act until goods are in the hands of land carriers and actually leaving the maritime arena." *Id.* at 1078. In *Jagenberg*, cargo was turned over to a separate entity at a port in Savannah, Georgia for storage, and was damaged while being retrieved from the storage area by an "inland trucker hired by [the sea carrier] to take it to Macon." *Id.* at 1069. Defendant cites other cases applying the same reasoning as in *Jagenberg*, all from outside the Eleventh Circuit and all involving cargo lost *after* it was unloaded from a vessel (*id.* at 4–5).[5] Regardless, this Court declines to cabin the Harter Act,

---

[5] The cases are *Mannesman Demag Corp. v. M/V CONCERT EXPRESS*, 225 F.3d 587, 588, 594–95 (5th Cir. 2000) (cargo damaged *en route* by truck from port in Baltimore, Maryland to Terre Haute, Indiana); *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, No. H-07-155, 2008 WL 686206, at *3–4, 18 (S.D. Tex. Mar. 7, 2008) (cargo damaged while being loaded onto truck at port in Houston, Texas, destined for Minnesota); *Great Am. Ins. Co. of N.Y. v. A/P Moller-Maersk A/S*, 482 F. Supp. 2d 357, 358 (S.D.N.Y. 2007) (cargo hijacked while being transported by truck from port in Guatemala to Guatemala City); *Sony Computer Ent. Inc. v. Nippon Express U.S.A. (Illinois), Inc.*, 313 F. Supp. 2d 333, 334–35, 337, 360 (S.D.N.Y. 2004) (cargo originated in Japan stolen from container yard in New Jersey while in possession of railway); *Philips-Van Heusen Corp. v. Mitsui O.S.K. Lines Ltd.*, No. Civ.A.1:CV-00-0665, 2002 WL 32348263, at *3, 5 (M.D. Penn. Aug. 14, 2002) ("loss of the cargo occurred during inland portion of journey while the containers rested in Harrisburg," Pennsylvania on journey from port in New Jersey); *Abbot Chem., Inc. v. Molinos de Puerto Rico, Inc.*, 62 F. Supp. 2d 441, 444, 449–50 (D.P.R. 1999) (soy grits damaged while deposited in silos in Puerto Rico for storage after shipment from Louisiana); and *Colgate Palmolive Co. v. M/V "ATLANTIC CONVEYOR"*, NO. 95 Civ. 159 (MBM), 1996 WL 742861, at *1, 6 (S.D.N.Y. Dec. 31, 1996) (cargo damaged during transport by truck from port in Baltimore, Maryland to Jeffersonville, Indiana).

which by its terms applies to a "carrier engaged in the carriage of goods to or from any port in the United States," 46 U.S.C. § 30702(a), and which the Eleventh Circuit specifically extends to a carrier's possession of cargo prior to loading onto a ship, *Allstate Ins. Co.*, 703 F.2d at 498, to an arbitrary point at which the arena is no longer "maritime."

"[W]hen Gulf Caribbean accepted custody of the extrusions it undertook all obligations imposed upon a carrier by the Harter Act." *Allstate Ins. Co.*, 703 F.2d at 499. The Court holds that the same is true here: when Seaboard Marine accepted custody of the seafood container, it undertook all obligations imposed on it by the Harter Act, under which Clause 4(b) of its Terms and Conditions is void.[6]

### III. CONCLUSION

Under federal law that governs the carriage of goods to and from ports of the United States, Clause 4(b) in Defendant carrier's Bill of Lading Terms and Conditions is void and does not exculpate Defendant carrier from liability for loss of cargo in its possession prior to loading the cargo onto a vessel. Accordingly, it is **ORDERED, ADJUDGED, and DECREED** that Defendant's Motion for Summary Judgment **(D.E. 16)** be, and the same is, hereby **DENIED**.

**DONE and ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida, on this 18th day of June, 2019.

*/s/ James Lawrence King*
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc: **All Counsel of Record**

---

[6] Because Clause 4(b) does not apply, this action is governed by COGSA's burden-shifting framework. *See Sony Magnetic Prods. Inc. of America v. Merivienti O/Y*, 863 F.2d 1537, 1539 (11th Cir. 1989).

6